UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

TARA S. RABUFFO, D.V.M.,                :
                                        :
            Plaintiff,                  :
     v.                                 :   No. 5:15-cv-06378
                                        :
VCA SMOKETOWN ANIMAL HOSPITAL           :
a/k/a VCA ANTECH;                       :
SUSAN MYERS TAYLOR;                     :
ANGELICA BARBAROSA,                     :
                                        :
            Defendants.                 :
_____

## MEMORANDUM OPINION

**Defendant VCA's Motion to Dismiss in Part, ECF No. 29 – Granted**

**Joseph F. Leeson, Jr.**                                    **August 8, 2016**
**United States District Judge**

### I.   Introduction

Defendant VCA, Inc., ("VCA") has filed a partial Motion to Dismiss Plaintiff Tara Rabuffo's Amended Complaint for Failure to State a Claim. Because the Amended Complaint does not allege sufficient facts to equitably toll the statute of limitations, VCA's Motion is granted.

### II.  Background of the Case

#### A.   Factual Background

The Amended Complaint alleges the following facts.

Plaintiff Tara Rabuffo, a veterinary surgeon, was diagnosed with degenerative disc disease, a permanent spinal disability, in 1996. Am. Compl. ¶¶ 9, 11, ECF No. 26. In July 2005, she was hired by Smoketown Animal Hospital ("Smoketown"), the predecessor to VCA, for the

position of Veterinary Surgeon. *Id.* ¶ 14. Smoketown accommodated her spinal disability by, among other things, assigning additional surgical technicians to assist Rabuffo with animals. *Id.* ¶ 15. At some point during her employment with Smoketown, Rabuffo also informed her employer that she had a latex allergy that caused skin sensitivity. *Id.* ¶ 16. Smoketown accommodated this disability by providing latex-free gloves and scrubs. *Id.*

In 2009, VCA acquired Smoketown. *Id.* ¶ 17. In June 2010, Rabuffo suffered a seizure while coming into contact with latex on a family vacation and learned that her body was now reacting much more strongly to latex. *Id.* ¶ 18. Rabuffo's doctor prescribed her to carry an "epi-pen," containing epinephrine, which is used to combat the effects of anaphylactic reactions to latex. *Id.* Rabuffo conducted training sessions with the staff at Smoketown to educate them on her condition and how to avoid bringing latex into contact with her, as well as how to inject her with an epi-pen in the event she could not self-administer. *Id.* ¶ 20. In addition, Rabuffo requested that VCA authorize the purchase of latex-free materials, but VCA refused. *Id.* ¶ 21. On four occasions between September 2010 and March 2011, Rabuffo suffered an anaphylactic reaction upon coming into contact with latex in the workplace. *Id.* ¶¶ 22-23.

In April 2011, Rabuffo had spinal disc replacement surgery. *Id.* ¶ 31. Following her surgery, she received FMLA medical certification forms from VCA. *Id.* ¶ 32. Rabuffo's spinal surgeon, Dr. Argires, completed the VCA medical certification forms, indicating Rabuffo's period of incapacity to be approximately eight to twelve weeks. *Id.* ¶ 34. On May 9, 2011, Rabuffo received a letter from VCA approving her FMLA leave. *Id.* ¶ 35. On May 20, 2011, Dr. Argires authorized Rabuffo to return to work for office consultations but not surgeries. *Id.* ¶ 36. VCA, however, refused to permit Rabuffo to return unless she could perform surgeries. *Id.* ¶ 37.

Around this same time, VCA also "began inquiring about [Rabuffo's] latex allergy condition." *Id.* ¶ 38. On May 24, 2011, Melanie Anastos, VCA's Hospital Manager, requested that Rabuffo provide letters from her spinal surgeon and cardiologist concerning her latex allergy and the safety of her use of the epi-pen. *Id.* ¶¶ 39-40. Rabuffo "was surprised at this inquiry," since Anastos "was well aware of [Rabuffo's] condition and the protocols in place to address any anaphylactic reaction [she] might have to latex." *Id.* ¶ 40. In response to VCA's inquiry, Dr. Patel, Rabuffo's cardiologist, wrote to VCA and explained that Rabuffo had no restrictions on returning to work and could continue to use her epi-pen for anaphylactic reactions, and Dr. Argires executed an authorization releasing Rabuffo to return to work immediately, with certain lifting restrictions. *Id.* ¶¶ 41-42. By letter dated June 6, 2011, VCA claimed the physician letters were insufficient, and it "demanded [Rabuffo's] doctors to complete another round of medical certifications." *Id.* ¶ 44. On June 10, 2011, Dr. Patel completed the certification and "supplemented the form with specific notes that detailed [Rabuffo's] ability to use her epi-pen for anaphylactic reactions, or have a co-worker administer same if her mental state was compromised." *Id.* ¶ 46. On June 17, 2011, Dr. Argires completed the certification, indicating that Rabuffo could return to work in four to six weeks, with certain lifting and time restrictions. *Id.* ¶ 48.

On June 28, 2011, Anastos wrote an email to VCA employees Wendy Jaros, Susan Taylor, and Lisa Hewitt concerning Rabuffo's latex allergy. *Id.* ¶¶ 55-58. Jaros responded that "[t]o me it does not sound like we can accommodate this . . . We cannot accommodate her restrictions by having someone else administer a shot to let her know up front that is not an option . . . ." *Id.* ¶ 57. Taylor responded that "I agree 100% that we CANNOT accommodate her

issues as I would never want to require another staff member to be responsible for her condition." *Id.* ¶ 58.

On Friday, July 1, 2011, Rabuffo contacted Anastos to confirm whether any further medical information was needed by VCA in order for her to return to work. *See* Am. Compl. ¶ 60. Anastos replied "No." *Id.* That same day, Rabuffo provided to VCA another note from Dr. Argires concerning her ability to return to work, and she asked Anastos whether VCA had confirmed her return to work on July 18, 2011. *Id.* ¶ 62. Anastos replied that she "had to check with [human resources] after the July 4th holiday weekend." *Id.* Also that same day, Lisa Hewlett, VCA Area Supervisor, told Rabuffo to wait until the weekend passed to find out if any forms were necessary. *Id.* ¶ 68.

On July 6, 2011, Anastos told Rabuffo that her submissions from Dr. Patel concerning Rabuffo's ability to return to work were "insufficient." *Id.* ¶ 74. In response, Rabuffo "explained to Ms. Anastos that her latex allergy and epinephrine were 'not an issue' and that Dr. Patel had already authored several letters and forms to that effect." *Id.* ¶ 75. On July 8, 2011, Dr. Patel sent a third letter to VCA confirming that Rabuffo was cleared to return from back surgery and that the use of an epi-pen was safe. *Id.* ¶ 76. On July 12, Dr. Argires executed another medical certification. *Id.* ¶ 77.

On July 13, 2011, Jaros, having read Dr. Patel's note, wrote to Anastos that "I'm not sure that I can show a hardship since we do not have a recent incident pertaining to this [latex allergy], we have accommodated it up until now, and she is just now returning to work from a separate medical issue—plus she does not have any restrictions for the latex issue." *Id.* ¶ 79.

On July 14, 2011, Hewlett and Rabuffo exchanged the following text messages:

Hewlett: Hi tara, I noticed u called and I am at a doc appt with my daughter also but they are sending you a letter for more clarification about

>
> the restrictions. This is all I know. Until then we can't have you return. Shouldn't be to much longer.
>
> Rabuffo: Is that all? R u sure theyre gonna let me back? I still am confused since all Drs involved have cleared me.
>
> Hewlet: They need to make sure everything is clear because we don't want you hurting yoourself. When I read it the form didn't say how long u could lift 11-25 lbs so maybe that's what their questioning. They didn't tell me anything so I think they juSt want to be surE. Your health is everyones first priority so don't worry.

*See* DiMaria Certification, Ex. E, ECF No. 29-2.[1]

By letter dated July 27, 2011, Rabuffo, through counsel, demanded that VCA permit her to return to work. Am. Compl. ¶ 94. VCA did not respond to Rabuffo's letter, and by letter dated August 19, 2011, Rabuffo's counsel "placed [VCA] on notice of [Rabuffo's] charge of discrimination and that its conduct left [her] with no choice but to constructively discharge herself from employment." *Id.* ¶ 97.

**B.     Procedural Background**

Following the termination of her employment in August 2011, Rabuffo timely filed charges with the Pennsylvania Human Rights Commission ("PHRC"), which charges were also cross-filed with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 6. On the eve of the PHRC evidentiary hearing,

> Defendant's counsel magically produced nearly 100 pages of evidence, much of which spelled out the internal communications between and among VCA executives evidencing discriminatory animus based on Plaintiff's latex allergy, while at the same time representing to Plaintiff that VCA really only needed more information about her lifting restrictions.

---

[1]     Rabuffo's Amended Complaint summarizes and paraphrases this text-message exchange. *See* Am. Compl. ¶¶ 81-83. VCA has attached a transcript of the exchange to its Motion to Dismiss, and Rabuffo has not challenged the accuracy of this transcript. "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

*Id.* ¶ 102. Rabuffo withdrew her action from the PHRC in order to file the present action. *Id.* ¶ 8. Rabuffo filed her initial Complaint in this matter on November 30, 2015, alleging that VCA engaged in unlawful discrimination under the Americans with Disabilities Act ("ADA") and Pennsylvania Human Rights Act ("PHRA") when it refused to accommodate her spinal disability and latex-related disability and when it refused to her permit to return to work because of these disabilities, resulting in her constructive discharge.

In response to Rabuffo's Complaint, VCA filed a partial motion to dismiss several of Rabuffo's claims, including her latex-related disability claim, contending that she had failed to exhaust her administrative remedies with respect to that claim. In response to VCA's Motion, Rabuffo acknowledged that she had failed to exhaust her remedies but contended that this failure was excused by the doctrines of equitable tolling and equitable estoppel. Specifically, Rabuffo contended that these doctrines applied because VCA had "actively misled" her to believe that the reason it was preventing her return to work was her spinal condition, when in fact the real reason was her latex allergy condition, a fact that she discovered as the result of disclosures VCA made in September 2015 as part of Rabuffo's PHRA proceedings.

The Court reviewed Rabuffo's Complaint and determined that she had failed to allege facts showing that VCA had actively misled her in this respect. *See* Mem. & Order, June 6, 2016, ECF No. 25. On the contrary, the Court found that the allegations in Rabuffo's Complaint, as well as the contents of documents relied upon in the Complaint, included statements in which VCA clearly communicated to Rabuffo that it was delaying her return to employment because of its concerns about her latex allergy condition. The Court therefore granted VCA's Motion to Dismiss Rabuffo's latex-related disability claim but permitted Rabuffo to amend her Complaint

Case 5:15-cv-06378-JFL   Document 38   Filed 08/08/16   Page 7 of 12

if she was in possession of facts sufficient to show that equitable tolling was appropriate with respect to that claim.

Rabuffo subsequently filed an Amended Complaint. VCA has again filed a motion to dismiss Rabuffo's latex-related disability claim, contending that Rabuffo has failed to plausibly allege that VCA actively misled her as to the reason for her discharge.[2]

**III.   Analysis**

As the Court summarized in its previous Memorandum, plaintiffs bringing employment discrimination charges under the ADA must comply with certain procedural requirements, including that "[b]efore filing a complaint, a plaintiff alleging discrimination under the ADA must exhaust her administrative remedies by filing a charge with the EEOC. . . . The ensuing suit is limited to claims that are within the scope of the initial administrative charge." *See Williams v. E. Orange Cmty. Charter Sch.*, 396 F. App'x 895, 897 (3d Cir. 2010) (citations omitted).  This exhaustion requirement, however, is prudential, not jurisdictional, in nature, and is subject to equitable tolling. *See Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007). "Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999).

The United States Court of Appeals for the Third Circuit has stated that, in the context of employment discrimination cases, "the equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, and (2) this deception caused the plaintiff's non-compliance with the limitations provision." *Oshiver v.*

---

[2]   The Court's previous Memorandum includes the standard of review for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* Mem. & Order, June 6, 2016.

7

*Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). "In addition, 'equitable tolling requires the plaintiff to demonstrate that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim.'" *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007) (quoting In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004)).[3]

Rabuffo contends that, following her spinal disc replacement surgery, VCA actively misled her as to the reason for her discharge by means of a series of alleged communications to her in July 2011. First, as summarized above, on July 1, 2011, in response to Rabuffo's question as to whether any further medical information was needed by VCA in order for her to return to work, Melanie Anastos, VCA's Hospital Manager, replied "No." *See* Am. Compl. ¶ 60. Second, that same day, in response to Rabuffo's question as to whether VCA had confirmed her return to work on July 18, 2011, Anastos stated that she "had to check with [human resources] after the July 4th holiday weekend." *Id.* ¶ 62. Also that same day, Lisa Hewlett, VCA Area Supervisor, told Rabuffo to wait until the weekend passed to find out if any forms were necessary. *Id.* ¶ 68. On July 6, 2011, Anastos told Rabuffo that her submissions from Dr. Patel were "insufficient." *Id.* ¶ 74. Finally, on July 14, 2011, Hewlett and Rabuffo exchanged text messages concerning Rabuffo's return to work, in which Hewlett wrote:

> [T]hey are sending you a letter for more clarification about the restrictions. This is all I know. . . . They need to make sure everything is clear because we don't want you hurting yoourself. When I read it the form didn't say how long u could lift

---

[3] The Court will conduct a single analysis of Rabuffo's equitable estoppel and equitable tolling claims. In Pennsylvania, "[t]he gist of equitable estoppel is misrepresentation of some kind which is relied on by another to his detriment." *Sachritz v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 455 A.2d 101, 103 (Pa. 1982). This is essentially the same as what the Third Circuit calls "equitable tolling." *See Oshiver*, 38 F.3d at 1390 (observing that what some courts call "equitable estoppel" "appears to be the same, in all important respects, as [the Third Circuit's] 'equitable tolling' insofar as [the Third Circuit's] 'equitable tolling' excuses a late filing where such tardiness results from active deception on the part of the defendant").

> 11-25 lbs so maybe that's what their questioning. They didn't tell me anything so I think they juSt want to be surE.

*See* DiMaria Certification, Ex. E. Rabuffo alleges that as a result of these communications she "reasonably believed that VCA was refusing to return her to work because of her spinal disability." Am. Compl. ¶ 91.

The statements alleged by Rabuffo do not support her contention that VCA actively misled her as to the reason for her discharge. First, the July 1, 2011 statements by Anastos and Hewlett do not address the reason for Rabuffo's discharge and cannot be construed as being misleading in this respect. Second, with respect to Anastos's statement on July 6, 2011, that Dr. Patel's submissions were insufficient, Dr. Patel was Rabuffo's cardiologist and had previously answered inquiries by VCA concerning Rabuffo's latex allergy and her use of an epinephrine pen. *See* Am. Compl. ¶¶ 41, 46. Thus, Anastos's statement would have indicated to Rabuffo that VCA continued to be concerned about her latex allergy, and indeed Rabuffo alleges that in response to Anastos's statement, she explained to Anastos "that her latex allergy and epinephrine were 'not an issue' and that Dr. Patel had already authored several letters and forms to that effect." Am. Compl. ¶ 75.[4] Finally, with respect to Hewlett's text messages, although Hewlett stated that she believed that the reason for VCA's delay in returning Rabuffo to work might be

---

[4] As summarized above, the Amended Complaint alleges that VCA began inquiring about Rabuffo's latex allergy in May 2011, "requesting letters from all of [Rabuffo's] doctors relating to her latex allergy and to confirm it was ok for Plaintiff to use her epi-pen." Am. Compl. ¶ 39. Following this request, Dr. Patel wrote to VCA "and explained that [Rabuffo] had no restrictions on returning to work and could in fact continue to use her epi-pen for anaphylactic reactions." *Id.* ¶ 41. By letter dated June 6, 2011, VCA "demanded [Rabuffo's] doctors to complete another round of medical certifications," *id.* ¶ 44, in response to which Dr. Patel completed the certification and "supplemented the form with specific notes that detailed [Rabuffo's] ability to use her epi-pen for anaphylactic reactions, or have a co-worker administer same if her mental state was compromised." *Id.* ¶ 46. In addition, following Anastos's July 6, 2011, inquiry, Dr. Patel sent another letter "confirming [Rabuffo] was cleared to return from back surgery and that the use of an epi-pen [was] safe." *Id.* ¶ 76.

related to Rabuffo's spinal condition and lifting restrictions, Hewlett made clear that this was only a supposition on her part and that her knowledge of the situation was limited: "This is all I know. . . . maybe that's what [they're] questioning . . . . They didn't tell me anything . . . ." Even if, as Rabuffo alleges, Hewlett misrepresented the extent of her knowledge of VCA's intentions, *see* Am. Compl. ¶ 69, Hewlett's statements cannot be construed as actively misleading Rabuffo as to the reason for her discharge.

Further, even if Hewlett's statements to Rabuffo could be construed, in isolation, as being misleading as to the reason for Rabuffo's delayed return to work, Rabuffo cannot show that this deception caused her non-compliance with the limitations provision, as Rabuffo's allegations include a number of statements in which VCA expressly informed her that it was concerned about her latex allergy and that it was delaying her return to work because of those concerns. These statements include the requests answered by Dr. Patel, as discussed above, as well as a letter dated August 31, 2011, from VCA's general counsel, Rachel Jeck, to Rabuffo's counsel, *see* Am. Compl. ¶ 104,[5] in which Jeck wrote the following:

> The issue of whether Dr. Rabuffo is capable of safely performing the essential functions of her job with or without reasonable accommodation arose because of the medical restrictions in the July, 1, 2011 note [regarding her spinal condition] as well as her severe latex allergy and the fact that the environment in which she works is not a latex free environment.
>
> As you may know, Dr. Rabuffo has a severe latex allergy as a result of which she has experienced systemic anaphylactic reactions on at least five occasions while on duty within a seven month period. The most recent incident occurred shortly before Dr. Rabuffo went out on FMLA leave for her cervical disk replacement surgery. One of Dr. Rabuffo's allergic reactions was so severe that she was unable to self-administer the epi-pen that she carries to inject herself with medication to alleviate the anaphylactic reaction. On at least one occasion, paramedics had to be called to treat Dr. Rabuffo. On another occasion, Dr. Rabuffo was hospitalized for 2 days as a result of an allergic reaction to exposure to latex.

---

[5] Rabuffo's Amended Complaint cites but does not include a copy of this letter. However, VCA has attached a copy of the letter to its Motion to Dismiss. *See* DiMaria Certification, Ex. F.

> In view of the events described above, VCA has initiated the interactive process to determine whether Dr. Rabuffo is capable of safely performing the essential functions of her job with or without reasonable accommodation. As part of the interactive process, VCA requests that Dr. Rabuffo provide the information requested on the attached Rider as to her latex allergy condition and her spinal condition.

*See* DiMaria Certification, Ex. F.[6]

The clear and express message of Jeck's letter is that VCA is not permitting Rabuffo to return to work because it is concerned about "her latex allergy condition and her spinal condition," with an emphasis on the latex allergy condition, which the letter discusses at length. Rabuffo alleges that at the time she received this letter she believed it was "nothing more than a smokescreen or pretextual reason or covering up [VCA's] intent, since VCA had already 'accommodated' that [latex allergy] condition a full year prior, and the protocol implemented at Smoketown was exactly the same as what her cardiologist later recommended." Am. Compl. ¶ 104. However, even if Rabuffo believed that VCA's stated concerns about her latex allergy were not genuine, this does not show that VCA actively misled her. VCA's letter made clear that VCA was explicitly invoking Rabuffo's latex allergy as a justification for its continued delay of her return to work. Thus, far from being "actively misleading" about VCA's reasons for delaying Rabuffo's return to work, VCA's letter directly told her that it was doing so because of its concerns about her spinal condition and latex allergy. Even if VCA's prior communications had been misleading, upon receipt of this letter, the facts which would support Rabuffo's latex disability cause of action were, or should have been, apparent to her. *See Oshiver*, 38 F.3d at 1389 (stating that "the statute of limitations will not begin to run, that is, will be tolled, until the

---

[6] Rabuffo suggests that the Court should disregard the August 31, 2011 letter because she received it after the date on which she considered herself to be constructively discharged, namely August 19, 2011. However, as VCA points out, Rabuffo did not file her initial PCRA charge until November 2011, well after her receipt of the August 31, 2011 letter.

facts which would support the plaintiff's cause of action are apparent, or should be apparent to a person with a reasonably prudent regard for his or her rights")

### IV. Conclusion

In sum, Rabuffo has failed to plausibly allege that VCA actively misled her respecting the reason for her discharge, and she has therefore failed to provide grounds for the Court to apply the doctrines of equitable tolling or equitable estoppel with respect to her latex-related disability claim. As there is no dispute that Rabuffo failed to exhaust her administrative remedies with respect to this claim, the claim is dismissed as untimely. Further, because Rabuffo has already had one opportunity to amend her complaint to allege facts in support of her contention that VCA actively misled her, and because further amendment would be futile, Rabuffo's latex-related disability claim is dismissed with prejudice. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge